E-FILED
Friday, 29 June, 2007  08:04:24 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CENTRAL TOWER EXCHANGE CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) ALBANY-CHICAGO COMPANY, ) ) Defendant. ) | Case No. 07-cv-1109 |

**O P I N I O N  and  O R D E R**

Before the Court is the Motion to Dismiss filed by Defendant, Albany-Chicago Company, on May 10, 2007 [Doc. 4]. For the reasons that follow, the motion is GRANTED.

**BACKGROUND**

All of the following facts are drawn from the Complaint and the attached "Sales Representative Agreement" and exhibits and addendums thereto. <u>Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.</u>, 474 F.3d 463, 466 (7th Cir. 2007) (contracts attached to complaints are considered part of the pleading). All of the facts are construed in a light most favorable to Plaintiff. <u>Waypoint Aviation Services, Inc. v. Sandel Avionics, Inc.</u>, 469 F.3d 1071, 1072 (7th Cir. 2006).

Albany-Chicago Company, Defendant, is in the business of manufacturing, machining, and finishing "custom aluminum and zinc die castings." On May 21, 2001, Plaintiff, Central Tower

Exchange Corporation, agreed to solicit orders for Defendant's products and services in a certain geographical area.  In exchange for soliciting orders, Defendant agreed to pay Plaintiff a commission.  The amount of that commission with respect to a particular product is the subject of this lawsuit.

Pursuant to section 6 of the Sales Representative Agreement (hereinafter "SRA"):

> Commissions shall be calculated on the Net Sales Price.  The term 'Net Sales Price' means the net price at which the Products are sold by the Company, exclusive of transportation and packing costs, insurance, duties, taxes, returns and allowances. Subsequent refunds or credit memorandums to the customer shall result in an adjustment to the commission earned and payable to the Representative. Commissions shall be calculated at this rate unless another rate is agreed upon in writing signed by both parties.  No commissions shall be earned on tooling or engineering costs charged to the customer.  The rate of commission shall be 5% or as negotiated and agreed to by both parties.

The SRA goes on to provide for the continuation of commissions for only a two year period in the event that the contract is terminated for reasons other than gross misconduct or breach by Plaintiff.  The SRA also contains an integration clause:

> This Agreement, including the appendices, represents the entire agreement between the parties on the subject matter hereof and supersedes all prior discussions, agreements and understandings of every kind and nature between them.  There are no conditions to this agreement not expressed herein.  No modification of this Agreement will be effective unless in writing and signed by both parties.

Finally, attached to the SRA is Exhibit A which describes Defendants business and Exhibit B which states that Plaintiff will "work on an account basis. . . ."

On June 25, 2003, the parties signed an Addendum to the SRA.  The addendum states:

> In accordance with the 'Sales Representation Agreement' between Albany-Chicago Company and Central Tower Exchange Corporation the following is an agreed modification of section #6.
>
> The commission paid for the ZF transaxle will be 2.25% to Central Tower Exchange Corp.  This was made necessary due to the competitive negotiations required to obtain the work from ZF industries on their DC V251/164 AXEL DRIVE UNIT.
>
> All other issues will adhere tot [sic] the original agreement of May 21, 2001.

This addendum is signed by Jeffrey Richardson for Defendant and Gary Brashear for Plaintiff.  Thus, it appears that the parties agreed that Plaintiff would receive a commission of 2.25% (and not the 5% listed in the SRA) for soliciting orders from ZF Industries on behalf of Defendant.

Plaintiff contends that the addendum does not contain all of the agreements between the parties.  Instead, Plaintiff points to an e-mail sent by Jeff Jorgensen (who works for Defendant) to Brashear on July 1, 2002, a year prior to the signing of the addendum.  In this e-mail, which also is attached to the Complaint, Defendant agreed to pay Plaintiff a 2.25%

3

commission but also guaranteed commissions for a certain period of time:

> Albany-Chicago will commit to a 2 1/4% commission on the ZF #W164-251 trans-axel program.  We would also guarantee that your two year termination clause could not commence until after the program has been PPAP-ed.  Which in the very least would yield two full years of commission.  It is our intent that you remain on this account for the entire length of the program.

Plaintiff alleges that this e-mail represents an agreement that Plaintiff would receive commissions through the entire length of the program which it presumably contends is longer than 2 years. Plaintiff seeks a declaration that Defendant is to pay Plaintiff "commissions at the rate of 2.25% of net sales for the entire length of the ZF industries DCV251/164 AXEL DRIVE UNIT program." (Complaint p. 3-4).

In the alternative, Plaintiff alleges that the addendum is void because there is a want of consideration.  In that event Plaintiff contends that it should have been paid a commission of 5% for the ZF Industries account.  Therefore, it seeks, in the alternative, a declaration that the addendum is void and unenforceable.

## ANALYSIS

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view the amended complaint in a light most favorable to the plaintiff.  Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995).  The Court must

4

accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. Richards v. Kiernan, 461 F.3d 880, 882 (7th Cir. 2006). Therefore, the complaint can only be dismissed if the plaintiff cannot prove any set of facts upon which relief can be granted. Cler v. Illinois Education Association, 423 F.3d 726, 729 (7th Cir. 2005). A plaintiff is not required to plead facts, legal theories, or to anticipate defenses. Massey v. Merrill Lynch and Co., Inc., 464 F.3d 642, 650 (7th Cir. 2006).

Plaintiff first seeks a declaration that it is entitled to a 2.25% commission for the length of the ZF Industries program as indicated in the e-mail. According to Illinois law[1], this Court's primary duty in construing a contract is to give meaning to the intent of the parties at the time the contract was formed. Regency Commercial Associates, LLC v. Lopax, Inc., ___ N.E.2d ___, 2007 WL 1345219, *4 (Ill. App. Ct. 2007). Illinois law subscribes to the "four corners" rule: that the parties' written agreement evinces the parties' intent and cannot be modified by extrinsic evidence. Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 992-993 (7th Cir. 2007). "Terms and conditions of a contract, if unambiguous, are enforced as they appear." Golden Rule Ins. Co. v, Schwartz, 786 N.E.2d

---

[1] There appears to be no dispute that Illinois contract law governs this dispute.

5

1010, 1016 (Ill. 2003).  Thus, "the parole evidence rule generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution, which would vary or modify its terms."  W.W. Vincent and Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 966 (Ill. App. Ct. 2004).

There is no ambiguity in the contract at issue, including the June 25, 2003 addendum.  Regency Commercial Associates, LLC 2007 WL 1345219 at *4 ("The question whether the language of a contract is ambiguous and requires additional evidence for interpretation is a question of law.").  Pursuant to the addendum, Plaintiff agreed to a 2.25% commission on the ZF Industries program, a concession that is allowed by section 6 of the SRA.  There is no mention in the addendum of providing more than the two-year extension of commissions upon termination that is included in the SRA.  Indeed, the addendum explicitly states that the terms of the original agreement govern any other "issues."  Plaintiff in fact seeks to *add* an additional term to the addendum; there is no contention that the addendum is "susceptible to more than one reasonable interpretation." Fuller Family Holdings, LLC v. Northern Trust Co., 863 N.E.2d 743, 758-759 (Ill. App. Ct. 2007).  As there is no ambiguity, there is no need to consider the July 1, 2002 e-mail, which is extrinsic evidence.

Nonetheless, Plaintiff contends that the e-mail should be considered in conjunction with the addendum. In <u>Pierce v. Atchison, Topeka and Santa Fe Ry. Co.</u>, 65 F.3d 562 (7th Cir. 1995), the Seventh Circuit stated that:

> we have recognized that parties can present evidence outside of the contract to show that although the contract appears to be clear to a typical reader of English, anyone who understood the circumstances in which the contract had been intended to apply would know that it does not mean what it seems to mean.

<u>Id</u>. at 568 (citation and quotation marks omitted). This so-called provisional admission rule is followed by various divisions of the Illinois Court of Appeals. See <u>Ahsan v. Eagle, Inc.</u>, 678 N.E.2d 1238, 1241 (Ill. App. Ct. 1997) ("We join the current trend in Illinois law which allows a court to consider parole evidence *provisionally* to determine if an agreement that appears to be clear on its face is actually ambiguous." (emphasis in original)).

However, in <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 706 N.E.2d 882, 885 (Ill. 1999), the Illinois Supreme Court declined to apply this provisional admission rule to a contract that includes an explicit integration clause. <u>Id.</u> at 885. The Court also declined to rule on whether the provisional admission rule would apply to contracts without an integration clause. <u>Id.</u> Nonetheless, in applying Illinois law, the Seventh Circuit, in <u>Davis v. G.N. Mortg. Corp.</u>, 396 F.3d 869 (7th Cir. 2005),

refused to extend the provisional admission rule to a contract that was fully integrated even though it did not contain an integration clause. The court stated that:

> An integrated writing is one intended by the parties to be a final and complete expression of the entire agreement, which means it contains such language as imports a complete legal obligation. Importantly, only the subject writing may be considered to determine the integration question.

Id. at 879 (citations and quotation marks omitted). If the contract represents a complete agreement between the parties, extrinsic evidence cannot be submitted to a trier of fact in order to determine the meaning of an otherwise facially unambiguous contract. See Quake Const. Inc. v. American Airlines, Inc., 565 N.E.2d 990, 994 (Ill. App. Ct. 1990) ("If no ambiguity exists in the writing, the parties' intent must be derived by the circuit court, as a matter of law, solely from the writing itself.").

Defendant's reliance on the provisional admission rule is misplaced. The SRA contains an explicit integration clause. Paul B. Episcope, Ltd. v. Law Offices of Campbell and Di Vincenzo, ___ N.E.2d ___, 2007 WL 465895, *6 (Ill App. Ct. 2007) ("Where a document is a fully integrated writing, the extrinsic or parole evidence rule is not available to vary or contradict the writing."). The addendum further adopts the integration clause along with the other provisions of the SRA which include

8

the two year continuation of commissions upon termination of the agreement. To hold that the e-mail modifies the addendum and in turn the SRA would be contrary to the explicit manifestation of the parties' intent "'to protect themselves against misinterpretations which might arise from extrinsic evidence.'" Owens v. McDermot, Will & Emery, 736 N.E.2d 145, 152 (Ill. App. Ct. 2000) (quoting Air Saftey, Inc., 706 N.E.2d at 885). This Court "cannot establish a contract different from that expressed in the written agreement." Freeland v. Edwards, 142 N.E.2d 701, 705 (Ill. 1957). As such, Plaintiff's first claim for declaratory relief fails to state a claim upon which relief can be granted.

Plaintiff's also seeks a declaration that the addendum is void for want of consideration. The modification of a contract, which is "a change in one or more respects that introduces new elements into the details of the contract, cancels some of them, but leave the general purpose and effect undisturbed," requires the traditional elements of a contract, an offer, acceptance, and consideration. Chicago College of Osteopathic Medicine v. George A. Fuller Co., 776 F.2d 198, 208 (7th Cir. 1985) (applying Illinois law); Van Der Molen v. Washington Mutual Finance, Inc., 835 N.E.2d 61, 69 (Ill. App. Ct. 2005). Unfortunately for Plaintiff, the addendum is not a "modification" that would require separate consideration. The

9

adoption of a commission rate of 2 1/4% does not constitute a "change" in the terms of the SRA – no new elements are added, no elements are cancelled.  See e.g. Schwinder v. Austin Bank of Chicago, 809 N.E.2d 180, 189 (Ill App. Ct. 2004).  The addendum is merely an election to use the "or as negotiated and agreed to by both parties" language in section 6 of the SRA governing the commission rate.  By its very title, the June 25, 2003 document is an addendum, a part of the SRA, not a modification to the SRA.  For this reason, Plaintiff's allegation that the addendum is void as it lacked consideration fails to state a claim.

The only case Plaintiff cites to indicate that it may have a claim is Doyle v. Holy Cross Hospital, 708 N.E.2d 1140 (Ill. 1999).  In that case, the Illinois Supreme Court considered the discharge of plaintiff/employees by defendant that was in contravention of an original employee handbook but that was consistent with a later modification of the handbook.  In noting that an employee handbook can create a contractual relationship between and employee and employer, the Court held that "the defendant's unilateral modification to the employee handbook lacked consideration and therefore is not binding on the plaintiffs."  Id. 708 N.E.2d at 1144-1145.  Plaintiff's claim before this Court, however, is distinguishable.  First, the addendum, as noted above, is not a modification of the SRA but merely the election to agree to a different commission rate as

the SRA provides.  Second, the addendum was signed by both parties and therefore was not a unilateral decision on the part of Defendant.  That Plaintiff and Defendant may agree to a commission rate lower than 5%, or for that matter higher than 5%, was specifically provided for in the SRA.  As no consideration is required in order for the addendum to be valid, Plaintiff's second request for declaration relief fails to state a claim.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendant on May 10, 2007 [Doc. 4] is GRANTED.  This matter is DISMISSED WITH PREJUDICE.  Case terminated.


Entered this  28th  day of June, 2007

                                            s/ Joe B. McDade
                                            JOE BILLY McDADE
                                    United States District Judge